**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| U.S. BANK NATIONAL | : | |
| ASSOCIATION, AS INDENTURE | : | **Case No. 2:24-cv-00068-JTM-JEM** |
| TRUSTEE FOR VCC 2022MC-1 | : | |
| TRUST, | : | **(Judge Philip P. Simon)** |
| | : | |
| **Plaintiff,** | : | **(Mag. John E. Martin)** |
| | : | |
| vs. | : | |
| | : | |
| LOTTAVILLE SORAGE, INC., *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DECREE OF FORECLOSURE

Plaintiff U.S. Bank National Association, as Indenture Trustee for VCC 2022MC-1 Trust (the "Plaintiff"), through undersigned counsel, pursuant to Fed.R.Civ.P 55(b), moves the Court for entry of default judgment against Defendants Lottaville Storage, Inc., Beverly Janine Dobbs, and Mary Ramierez AKA Mary Ramirez (the "Default Defendants"). The Default Defendants have failed to move, plead, or otherwise defend within the time required by the Federal Rules of Civil Procedure. Further, there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. This Motion is supported by the attached Memorandum, Affidavit in Support of Judgment attached as Exhibit 1, and Military Affidavit attached as Exhibit 2.

Respectfully submitted,

/s/ Zachary D. Prendergast
Zachary D. Prendergast (28175-15)
*Attorney for Plaintiff U.S. Bank National*
*Association, as Indenture Trustee for VCC*
*2022MC-1 Trust*
ROBBINS KELLY PATTERSON &
TUCKER
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
Phone:  (513) 721-3330
Fax:     (513) 721-5001
E-Mail: zprendergast@rkpt.com

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    Background**

**A.    Claim on Promissory Note Against Lottaville Storage, Inc.**

On or about March 25, 2015, Velocity Commercial Capital, LLC (the "<u>Original Lender</u>") made a loan to Lottaville Storage, Inc. (the "<u>Borrower</u>") in the amount of $144,000.00 (the "<u>Loan</u>").[1]    The Loan is evidenced by a Semi-Annual Adjustable Term Note (the "<u>Note</u>") executed by the Borrower in favor of the Original Lender dated March 25, 2015 in the original principal amount of $144,000.00.[2]    Plaintiff is in possession and is entitled to enforce the Note.[3]

The Note is in default as a result of the Borrower's failure to keep principal, interest, and other payments current under the terms of the Note, and the Plaintiff has accelerated the Note. The Borrower initially defaulted by its failure to make the April 1, 2023 payment and all payments due thereafter, and the Plaintiff has accelerated the amounts due on the Note.[4]

All conditions precent to the Plaintiff's enforcement of the Note have occurred. [5]

As a result of the default and acceleration, the Plaintiff is owed from the Borrower the amount of $183,055.88 as of November 30, 2024, plus regular interest that continues to accrue at rate specified in the Note (currently 12.49% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.[6]

---

[1] Affidavit of Sandie Lawrence ("<u>Affidavit</u>"), at ¶ 7 (attached as <u>Exhibit 1</u>).
[2] Affidavit, at ¶ 8.
[3] Affidavit, at ¶ 9.
[4] Affidavit, at ¶¶ 10-11.
[5] Affidavit, at ¶ 12.
[6] Affidavit, at ¶ 13.

**B.      Claim on Guaranty Against Beverly Janine Dobbs**

In connection with the Note, and as additional security for the Note, Defendant Beverly Janine Dobbs (the "Guarantor") executed a certain Unlimited Guaranty ("Guaranty") agreeing to guaranty payment of all obligations of Borrower to Original Lender under the Note.[7]   Said Guaranty is in default, by virtue of Guarantor's failure to pay the Plaintiff the amounts due from the Borrower under the Note.[8]

All conditions precent to the Plaintiff's enforcement of the Guaranty have been satisfied.[9]

As a result of the default, the Plaintiff is owed from the Guarantor the amount of $183,055.88 as of November 30, 2024, plus regular interest that continues to accrue at rate specified in the Note (currently 12.49% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.[10]

**C.      Claim for Foreclosure Against Borrower and Mary Ramirez AKA Mary Ramierez.**

The Plaintiff is the owner and holder of a certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage"), dated March 25, 2015 and executed by the Borrower to secure repayment of the Note.   The Mortgage was recorded on April 2, 2015 as Document No. 2015019533 of the Official Records of Lake County, Indiana.[11]

The Mortgage was assigned to U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2015-1 by virtue of an Assignment of Commercial Mortgage,

---

[7] Affidavit, at ¶ 14.
[8] Affidavit, at ¶ 16.
[9] Affidavit, at ¶ 17
[10] Affidavit, at ¶ 18.
[11] Affidavit, at ¶ 19.

Security Agreement, Assignment of Leases and Rents and Fixture Filing recorded as Instrument No. 2016020699 of the Official Records of Lake County, Indiana.[12]

The Mortgage was assigned to the Plaintiff by virtue of an Assignment of Commercial Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing recorded as Instrument No. 2022-532160 of the Official Records of Lake County, Indiana.[13]

The Mortgage is in default by virtue of the Note being in default. As a consequence of the Borrower's failure to make principal, interest, escrow, and other payments when due under the Note, the Mortgage is in default, the conditions of defeasance contained in the Mortgage have been broken, and the Plaintiff is entitled to have the Mortgage foreclosed.[14]

Defendants Mary Ramirez AKA Mary Ramierez and Town of Merrillville, Indiana were named as defendants because they may claim an interest in the real estate that is encumbered by the Mortgage by virtue of various liens or judgments of record. Any such interests are subordinate to the Plaintiff's, however.

**II. The Court should grant the Plaintiff default judgment against the Default Defendants.**

Plaintiff moves the Court for an entry of default judgment against the Default Defendants.

### A.    The Default Defendants have all been served.

Plaintiff filed its Complaint on Promissory Note, Personal Guaranty, for Foreclosure and Other Relief in this matter on February 2, 2024. The Default Defendants were served with a Summons and a copy of the Plaintiff's Complaint as follows:

| Defendant | Method of Service | Date of Service |
|-----------|-------------------|-----------------|
| Lottaville Storage, Inc. | Process Server | March 1, 2024 |
| Beverly Janine Dobbs | Process Server | March 1, 2024 |

---

[12] Affidavit, at ¶ 20.
[13] Affidavit, at ¶ 20.
[14] Affidavit, at ¶ 22.

| Mary Ramierez AKA Mary Ramirez | Certified Mail | March 2, 2024 |
|---|---|---|

**B.    The Court should grant the Plaintiff default judgment.**

As of the date of this Motion, the Default Defendants have not moved, pleaded, or otherwise defended in this matter even though Fed. R. Civ. P. 12 required them to serve an answer within 21 days after service.

Fed. R. Civ. P. 55 states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

In this case, the docket clearly shows the Default Defendants were served with Summons and a copy of the Complaint in this matter, but has failed to timely move, plead, or otherwise defend. Therefore, the Court should enter a default judgment against the Default Defendants.

## III.    Conclusion

For the reasons stated above, the Plaintiff requests default judgment against all the Default Defendants set forth above.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was served through the Court's ECF System on this 12th day of December, 2024 to the following:

Joseph C. Svetanoff, Esq.
Email: jcsvetanoff@kopkalaw.com
*Attorney for the Town of*
*Merrillville, Indiana*

and on the following via regular U.S. Mail on this 12th day of December, 2024:

LOTTAVILLE STORAGE, INC., an
Indiana corporation
c/o Robert Steffan, Registered Agent
5111 E. 900 N.
Fair Oaks, Indiana 47943

Also Serve:
c/o Beverly Janine Dobbs, President
1715 Bethel Street
Leeds, Alabama 35094

BEVERLY JANINE DOBBS
1715 Bethel Street
Leeds, Alabama 35094

MARY RAMIREZ
6811 Rhode Island Ave.
Apt. 1-N
Hammond, IN 46323

<u>/s/ Zachary D. Prendergast</u>
Zachary D. Prendergast (28175-15)

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL | : | **Case No. 2:24-cv-00068** |
| ASSOCIATION, AS INDENTURE | : | |
| TRUSTEE FOR VCC 2022MC-1 | : | **(Judge Philip P. Simon)** |
| TRUST, | : | |
| | : | **(Mag. John E. Martin)** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| LOTTAVILLE STORAGE, INC., | : | |
| an Indiana corporation, et al., | : | |
| | : | |
| Defendants. | : | |

## <u>AFFIDAVIT OF SANDIE LAWRENCE</u>

Affiant, Sandie Lawrence, having been first duly sworn, deposes and states as follows:

1.      I am the Manager of Special Servicing for Velocity Commercial Capital, LLC, the asset manager and special servicer for Plaintiff U.S. Bank National Association, as Indenture Trustee for VCC 2022-MC1 Trust (the "<u>Plaintiff</u>"). I am competent to testify as to the matters stated in this affidavit.

2.      I have personal knowledge of the facts stated in this affidavit.

3.      My responsibilities include servicing certain assets and loans owned by the Plaintiff.

4.      In my position, I am familiar with the manner in which business records are maintained by the Plaintiff for the purpose of servicing promissory notes, mortgages,

{05408949-1 }

and other related loan documents, and I also have direct access to those records related to the documents that are the subject of this matter.

5.    The business records are maintained by the Plaintiff and are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records.  These business records are regularly kept by the Plaintiff in the course of its business of servicing promissory notes, mortgages, and other related loan documents.  It is also the Plaintiff's regular practice to make such records.

6.    In connection with making this affidavit, I personally examined the Plaintiff's business records relating to Defendant Lottaville Storage, Inc. (the "Borrower") and Defendant Beverly Janine Dobbs, an individual (the "Guarantor") on the date I executed this affidavit.  The following statements contained in this affidavit are based on information contained in such business records.

7.    On or about March 25, 2015, Velocity Commercial Capital, LLC (the "Original Lender") made a loan to Defendant Lottaville Storage, Inc., an Indiana corporation (the "Defendant") in the amount of $144,000.00 (the "Loan").  A copy of the Loan Agreement is attached as Exhibit A.

8.    The Loan is evidenced by a Semi-Annual Adjustable Term Note (the "Note") executed by the Defendant in favor of the Original Lender dated March 25, 2015 in the original principal amount of $144,000.00.  A copy of the Note with Allonge executed in blank is attached as Exhibit B.

9.    Plaintiff is in possession of the original copy of and is entitled to enforce the Note.

10.    The Note is in default as a result of the Borrower's failure to keep principal, interest, and other payments current under the terms of the Note.    Specifically, the Borrower is due for the April 1, 2023 payment.

11.    As a result of the Borrower's aforementioned payment default, the Plaintiff accelerated all unpaid principal amounts and all accrued and unpaid interest and fees due under the Note.

12.    All conditions precedent to the Plaintiff's enforcement of the Note have occurred.

13.    As a result of the above default and acceleration, the Plaintiff is presently owed on the Note and the Mortgage (as that term is defined below) from the Borrower as of November 30, 2024:

| Principal | $130,850.77 |
| Accrued Regular Interest | $9,535.76 |
| Escrow/Impound Overdraft | $2,896.13 |
| Unpaid Late Charges | $762.33 |
| Assessed Default Interest | $16,035.75 |
| Recoverable Balance | $12,251.51 |
| Lien Release Fee | $12.00 |
| Recording Fee | $25.00 |
| Unassessed Default Interest | $421.63 |
| Payoff Quote Fee | $150.00 |
| Foreclosure Fees and Costs | $10,000.00 |
| Projected Fees | $115.00 |
| TOTAL | $183,055.88 |

plus regular interest that continues to accrue at rate specified in the Note (currently 12.49% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.

14.    In connection with the Note and Loan Agreement, and as additional security for the Note, Defendant Beverly Janine Dobbs (the "Guarantor") executed a

certain Unlimited Guaranty ("Guaranty") agreeing to guaranty payment of all obligations of Borrower to Original Lender under the Note. A copy of the Guaranty is attached as Exhibit C.

15.  The Note is in default as set forth above.

16.  The Guarantor is in default of the Guaranty by virtue of its failure to pay to the Plaintiff the amounts due from the Borrower under the Note.

17.  All conditions precedent to the Plaintiff's enforcement of the Guaranty have been satisfied.

18.  As a result of his default under the Guaranty, the Plaintiff is presently owed on the Guaranty from Guarantor as of November 30, 2024:

| Principal | $130,850.77 |
|---|---|
| Accrued Regular Interest | $9,535.76 |
| Escrow/Impound Overdraft | $2,896.13 |
| Unpaid Late Charges | $762.33 |
| Assessed Default Interest | $16,035.75 |
| Recoverable Balance | $12,251.51 |
| Lien Release Fee | $12.00 |
| Recording Fee | $25.00 |
| Unassessed Default Interest | $421.63 |
| Payoff Quote Fee | $150.00 |
| Foreclosure Fees and Costs | $10,000.00 |
| Projected Fees | $115.00 |
| TOTAL | $183,055.88 |

plus regular interest that continues to accrue at rate specified in the Note (currently 12.49% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.

19.  The Plaintiff is the owner and holder of a certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage"), dated March 25, 2015 and executed by the Borrower to secure repayment of the Note. The Mortgage

was recorded on April 2, 2015 as Document No. 2015019533 of the Official Records of Lake County, Indiana. A copy of the Mortgage is attached as Exhibit D.

20.    The Mortgage was assigned to the Plaintiff by virtue of the recorded assignments attached as Exhibit E.

21.    The Mortgage constitutes a valid first and best lien upon the real estate and improvements described in the Mortgage (the "Property"), save any statutory lien for real estate taxes and assessments.

22.    As a consequence of the Borrower's failure to make principal, interest, escrow, and other payments when due under the Note, the Mortgage is in default, the conditions of defeasance contained in the Mortgage have been broken, and the Plaintiff is entitled to have the Mortgage foreclosed.

23.    All conditions precedent to the Plaintiff's enforcement of the Mortgage have occurred.

24.    To further secure repayment of the Note, and in the same document as the Mortgage, the Borrower executed an assignment of all rents and revenues of the Property (the "Assignment of Rents") to the owner and holder of the Mortgage.

25.    The Assignment of Rents constitutes a present, absolute, and unconditional assignment by the Borrower of all rents, income, issues, and profits of the Property (collectively, the "Rents").

26.    As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff has revoked the license it granted the Borrower in the Assignment of Rents to collect the Rents, and the Plaintiff is

now entitled to collect and receive all Rents from the Property and all Rents that the Borrower has collected since the default.

27.    All conditions precedent to the Plaintiff's enforcement of the Assignment of Rents have occurred.

28.    To further secure repayment of the Note, and as part of the same transaction and in the same document as the Mortgage, the Borrower pledged all personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Security Interest").

29.    The Security Interest was perfected by recording the Mortgage.

30.    The Security Interest constitutes a valid lien on all the personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Personal Property").

31.    As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff is entitled to exercise all its rights under the Security Interest and gain immediate possession of all the Personal Property or, in the alternative, have those items included in the appraisal of the Property and sold or auctioned off as part of the Property.

32.    All conditions precedent to the Plaintiff's enforcement of the Security Interest have occurred.

33.    The Property is a 15,869 square foot, nine-unit warehouse. It is believed to be tenant-occupied and to produce over $7,400.00 a month.

[SIGNATURE PAGE FOLLOWS]

Further Affiant sayeth naught.

_____
Sandie Lawrence

Sworn to and subscribed before me, a Notary Public, by Sandie Lawrence, on this
_____ day of December, 2024.


SEE ATTACHED

_____
Notary Public

My commission expires: _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Ventura

Subscribed and sworn to (or affirmed) before me on this 5th day of December , 20 24 , by Sandie Lawrence

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

DONNA PAYNE
Notary Public - California
Ventura County
Commission # 2350875
My Comm. Expires Mar 11, 2025

(Seal)                            Signature



Loan No: ███████

## LOAN AGREEMENT

This LOAN AGREEMENT (this "Agreement") is entered into as of **March 25, 2015**, between **Lottaville Storage Inc.** , an **Indiana corporation**, with its chief executive office located at **6149 Cleveland Street** , **Merrillville, Indiana 46410** (the "Borrower") and Velocity Commercial Capital, LLC, a California limited liability company, with an address of PO BOX 7089, Westlake Village, CA 91359-7089 (the "Lender").

FOR VALUE RECEIVED, and in consideration of the granting by the Lender of financial accommodations to or for the benefit of the Borrower, including without limitation respecting the Obligations (as hereinafter defined), the Borrower represents to and agrees with the Lender, as of the date hereof and as of the date of each loan, credit and/or other financial accommodation, as follows:

### 1. THE LOAN

1.1    Loan. Subject to the terms and conditions of this Agreement, the Lender hereby agrees to make a loan to Borrower in the original principal amount of **$144,000.00** (the "Loan"). The Loan shall be evidenced by that certain Semi-Annual Adjustable Term Note, of even date herewith (the "Note") by Lottaville Storage Inc. in favor of the Lender in the original principal amount of **$144,000.00**. This Agreement, the Note, and any and all other documents, amendments or renewals executed and delivered in connection with any of the foregoing are collectively hereinafter referred to as the "Loan Documents".

1.2    Definitions. The following definitions shall apply:

(a)    "Code" shall mean the Indiana Uniform Commercial Code, Title 26 IC as amended from time to time.

(b)    "Obligation(s)" shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, owing by the Borrower to the Lender at any time, of each and every kind, nature and description, whether arising under this Agreement or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Borrower to the Lender; or are due indirectly by the Borrower to the Lender as endorser, guarantor or other surety, or as borrower of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Borrower or due from the Borrower to the Lender from time to time and all costs and expenses referred to in this Agreement.

(c)    "Person" or "party" shall mean individuals, partnerships, corporations, limited liability companies and all other entities.

All words and terms used in this Agreement other than those specifically defined herein shall have the meanings accorded to them in the Code.

2.    REPRESENTATIONS AND WARRANTIES

2.1     Organization and Qualification. Borrower is a duly organized and validly existing corporation under the laws of the State of its incorporation with the exact legal name set forth in the first paragraph of this Agreement. Borrower is in good standing under the laws of said State, has the power to own its property and conduct its business as now conducted and as currently proposed to be conducted, and is duly qualified to do business under the laws of each state where the nature of the business done or property owned requires such qualification.

2.2     Subsidiaries. Borrower has no subsidiaries other than those listed on Schedule 2.2, if any, and the Borrower has never consolidated, merged or acquired substantially all of the assets of any other entity or person other than those listed on Schedule 2.2, if any.

2.3     Corporate Records. Borrower's corporate charter, articles or certificate of organization or incorporation and all amendments thereto have been duly filed and are in proper order. All outstanding capital stock issued by the Borrower was and is properly issued and all books and records of the Borrower, including but not limited to its minute books, bylaws and books of account, are accurate and up to date and will be so maintained.

2.4     Title to Properties,  Absence of Liens. Borrower has good and clear record and marketable title to all of its properties and assets, and all of its properties and assets are free and clear of all mortgages, liens, pledges, charges, encumbrances and setoffs, except (a) the mortgages, deeds of trust and security interests as set forth on Schedule 2.4, if any, and (b) the leases of personal property as set forth on Schedule 2.4, if any.

2.5     Places of Business. Borrower's chief executive office is correctly stated in the preamble to this Agreement, and Borrower shall, during the term of this Agreement, keep the Lender currently and accurately informed in writing of each of its other places of business, and shall not change the location of such chief executive office or open or close, move or change any existing or new place of business without giving the Lender at least thirty (30) days prior written notice thereof.

2.6     Valid Obligations. The execution, delivery and performance of the Loan Documents have been duly authorized by all necessary corporate action and each represents a legal, valid and binding obligation of Borrower and is fully enforceable according to its terms, except as limited by laws relating to the enforcement of creditors' rights.

2.7     Conflicts. There is no provision in Borrower's organizational or charter documents, if any, or in any indenture, contract or agreement to which Borrower is a party which prohibits, limits or restricts the execution, delivery or performance of the Loan Documents.

2.8     Governmental Approvals. The execution, delivery and performance of the Loan Documents does not require any approval of or filing with any governmental agency or authority.

2.9     Litigation, etc. There are no actions, claims or proceedings pending or to the knowledge of Borrower threatened against Borrower which might materially adversely affect the ability of Borrower to conduct its business or to pay or perform the Obligations.

2.10    Taxes. The Borrower has filed all Federal, state and other tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from the Borrower have been fully paid. The Borrower has established on its books reserves adequate for the payment of all Federal, state and other tax liabilities (if any).

2.11    Use of Proceeds. No portion of any loan is to be used for (i) the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the

2

Board of Governors of the Federal Reserve System, 12 C.F.R. 221 and 224 or (ii) primarily personal, family or household purposes.

2.12    Environmental. As of the date hereof neither the Borrower nor any of Borrower's agents, employees or independent contractors (1) have caused or are aware of a release or threat of release of Hazardous Materials (as defined herein) on any of the premises or personal property owned or controlled by Borrower ("Controlled Property") or any property abutting Controlled Property ("Abutting Property"), which could give rise to liability under any Environmental Law (as defined herein) or any other Federal, state or local law, rule or regulation; (2) have arranged for the transport of or transported any Hazardous Materials in a manner as to violate, or result in potential liabilities under, any Environmental Law; (3) have received any notice, order or demand from the Environmental Protection Agency or any other Federal, state or local agency under any Environmental Law; (4) have incurred any liability under any Environmental Law in connection with the mismanagement, improper disposal or release of Hazardous Materials; or (5) are aware of any inspection or investigation of any Controlled Property or Abutting Property by any Federal, state or local agency for possible violations of any Environmental Law.

To the best of Borrower's knowledge, neither Borrower, nor any prior owner or tenant of any Controlled Property, committed or omitted any act which caused the release of Hazardous Materials on such Controlled Property which could give rise to a lien thereon by any Federal, state or local government. No notice or statement of claim or lien affecting any Controlled Property has been recorded or filed in any public records by any Federal, state or local government for costs, penalties, fines or other charges as to such property. All notices, permits, licenses or similar authorizations, if any, required to be obtained or filed in connection with the ownership, operation, or use of the Controlled Property, including without limitation, the past or present generation, treatment, storage, disposal or release of any Hazardous Materials into the environment, have been duly obtained or filed.

Borrower agrees to indemnify and hold the Lender harmless from all liability, loss, cost, damage and expense, including attorney fees and costs of litigation, arising from any and all of its violations of any Environmental Law (including those arising from any lien by any Federal, state or local government arising from the presence of Hazardous Materials) or from the presence of Hazardous Materials located on or emanating from any Controlled Property or Abutting Property whether existing or not existing and whether known or unknown at the time of the execution hereof and regardless of whether or not caused by, or within the control of Borrower. Borrower further agrees to reimburse Lender upon demand for any costs incurred by Lender in connection with the foregoing. Borrower agrees that its obligations hereunder shall be continuous and shall survive the repayment of all debts to Lender and shall continue so long as a valid claim may be lawfully asserted against the Lender.

The term "Hazardous Materials" includes but is not limited to any and all substances (whether solid, liquid or gas) defined, listed, or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Law or that may have a negative impact on human health or the environment, including but not limited to petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives;

The term "Environmental Law" means any present and future Federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to protection of human health or the environment, relating to Hazardous Materials, relating to liability for or costs of remediation or prevention of releases of Hazardous Materials or relating to liability for or costs of other actual or threatened danger to human health or the environment. The term "Environmental Law" includes, but is not limited to, the following statutes, as amended, any successor thereto, and any regulations promulgated pursuant thereto, and any state or local statutes, ordinances, rules, regulations and the like addressing similar issues:  the Comprehensive Environmental Response, Compensation and Liability Act; the Emergency Planning and Community Right-to-Know Act; the Hazardous Materials Transportation Act; the Resource Conservation and Recovery Act (including but not limited to Subtitle I relating to underground storage tanks); the Solid Waste

3

Disposal Act; the Clean Water Act; the Clean Air Act; the Toxic Substances Control Act; the Safe Drinking Water Act; the Occupational Safety and Health Act; the Federal Water Pollution Control Act; the Federal Insecticide, Fungicide and Rodenticide Act; the Endangered Species Act; the National Environmental Policy Act; the River and Harbors Appropriation Act; and IC Title 13.

3.    AFFIRMATIVE COVENANTS

3.1    Payments and Performance. Borrower will duly and punctually pay all Obligations becoming due to the Lender and will duly and punctually perform all Obligations on its part to be done or performed under this Agreement.

3.2    Books and Records; Inspection. Borrower will at all times keep proper books of account in which full, true and correct entries will be made of its transactions in accordance with generally accepted accounting principles, consistently applied and which are, in the opinion of a Certified Public Accountant acceptable to Lender, adequate to determine fairly the financial condition and the results of operations of Borrower. Borrower will at all reasonable times make its books and records available in its offices for inspection, examination and duplication by the Lender and the Lender's representatives and will permit inspection of all of its properties by the Lender and the Lender's representatives. Borrower will from time to time furnish the Lender with such information and statements as the Lender may request in its sole discretion with respect to the Obligations.

3.3    Financial Statements. Borrower will furnish to Lender:

(a)    from time to time, such financial data and information about Borrower as Lender may reasonably request; and

(b)    any financial data and information about any guarantors of the Obligations as Lender may reasonably request.

3.4    Conduct of Business. The Borrower will maintain its existence in good standing and comply with all laws and regulations of the United States and of any state or states thereof and of any political subdivision thereof, and of any governmental authority which may be applicable to it or to its business; provided that this covenant shall not apply to any tax, assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

3.5    Contact with Accountant. The Borrower hereby authorizes the Lender to directly contact and communicate with any accountant employed by Borrower in connection with the review and/or maintenance of Borrower's books and records or preparation of any financial reports delivered by or at the request of Borrower to Lender.

3.6    Taxes. Borrower will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, retirement benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

3.7    Maintenance. Borrower will keep and maintain its properties, if any, in good repair, working order and condition. Borrower will immediately notify the Lender of any loss or damage to or any occurrence which would adversely affect the value of any such property.

3.8    Insurance. Borrower will maintain in force property and casualty insurance on any property of the Borrower, if any, against risks customarily insured against by companies engaged in businesses similar to that of the Borrower containing such terms and written by such companies as may be satisfactory to the Lender, such insurance to be payable to the Lender as its interest may appear in the event of loss and to name the Lender as insured pursuant to a standard loss payee clause; no loss shall

4

be adjusted thereunder without the Lender's approval; and all such policies shall provide that they may not be canceled without first giving at least Thirty (30) days written notice of cancellation to the Lender. In the event that the Borrower fails to provide evidence of such insurance, the Lender may, at its option, secure such insurance and charge the cost thereof to the Borrower. At the option of the Lender, all insurance proceeds received from any loss or damage to any property shall be applied either to the replacement or repair thereof or as a payment on account of the Obligations. From and after the occurrence of an Event of Default, the Lender is authorized to cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to the Lender, as a payment on account of the Obligations.

3.9    Notification of Default. Immediately upon becoming aware of the existence of any condition or event which constitutes an Event of Default, or any condition or event which would upon notice or lapse of time, or both, constitute an Event of Default, Borrower shall give Lender written notice thereof specifying the nature and duration thereof and the action being or proposed to be taken with respect thereto.

3.10    Notification of Material Litigation. Borrower will immediately notify the Lender in writing of any litigation or of any investigative proceedings of a governmental agency or authority commenced or threatened against it which would or might be materially adverse to the financial condition of Borrower or any guarantor of the Obligations.

3.11    Pension Plans. With respect to any pension or benefit plan maintained by Borrower, or to which Borrower contributes ("Plan"), the benefits under which are guaranteed, in whole or in part, by the Pension Benefit Guaranty Corporation created by the Employee Retirement Income Security Act of 1974, P.L. 93-406, as amended ("ERISA") or any governmental authority succeeding to any or all of the functions of the Pension Benefit Guaranty Corporation ("Pension Benefit Guaranty Corporation"), Borrower will (a) fund each Plan as required by the provisions of Section 412 of the Internal Revenue Code of 1986, as amended; (b) cause each Plan to pay all benefits when due; (c) furnish Lender (i) promptly with a copy of any notice of each Plan's termination sent to the Pension Benefit Guaranty Corporation (ii) no later than the date of submission to the Department of Labor or to the Internal Revenue Service, as the case may be, a copy of any request for waiver from the funding standards or extension of the amortization periods required by Section 412 of the Internal Revenue Code of 1986, as amended and (iii) notice of any Reportable Event as such term is defined in ERISA; and (d) subscribe to any contingent liability insurance provided by the Pension Benefit Guaranty Corporation to protect against employer liability upon termination of a guaranteed pension plan, if available to Borrower.

4.    NEGATIVE COVENANTS

4.1    Sale of Interest. There shall not be any sale or transfer of ownership of any interest in the Borrower without the Lender's prior written consent.

4.2    Merger. Borrower shall not merge or consolidate or be merged or consolidated with or into any other entity.

4.3    Restriction on Liens. Borrower shall not grant any security interest in, or mortgage of, any of its properties or assets without Lender's prior consent. Borrower shall not enter into any agreement with any person other than the Lender that prohibits the Borrower from granting any security interest in, or mortgage of, any of its properties or assets.

4.4    Change of Name, etc. Borrower shall not change its legal name or the State or the type of its organization, without giving the Lender at least 30 days prior written notice thereof.

5

## 5.    DEFAULT

5.1    Default.  "Event of Default" shall mean the occurrence of one or more of any of the following events:

(a)    default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

(b)    failure of the Borrower or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(c)    default of any material liability, obligation or undertaking of the Borrower or any guarantor of the Obligations to any other party;

(d)    if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor of the Obligations in connection with this Agreement or in any supporting financial statement of the Borrower or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(e)    if the Borrower or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(f)    the death of the Borrower or any guarantor of the Obligations and, if the Borrower or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(g)    the institution by or against the Borrower or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(h)    the service upon the Lender of a writ in which the Lender is named as trustee of the Borrower or any guarantor of the Obligations;

(i)    a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(j)    any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor of the Obligations;

(k)    the termination or revocation of any guaranty of the Obligations; or

(l)    the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the

6

prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor of the Obligations to the Lender has been or may be impaired.

5.2    <u>Acceleration</u>. If an Event of Default shall occur, at the election of the Lender, all Obligations shall become immediately due and payable without notice or demand, except with respect to Obligations payable on DEMAND, which shall be due and payable on DEMAND, whether or not an Event of Default has occurred.

5.3    <u>Nonexclusive Remedies</u>. All of the Lender's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

## 6.    MISCELLANEOUS

6.1    <u>Waivers</u>. The Borrower waives notice of intent to accelerate, notice of acceleration, notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations, and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof.

6.2    <u>Waiver of Homestead</u>. To the maximum extent permitted under applicable law, the Borrower hereby waives and terminates any homestead rights and/or exemptions respecting any of its property under the provisions of any applicable homestead laws, including without limitation, IC 34-55-10-2.

6.3    <u>Deposit Collateral</u>. The Borrower hereby grants to the Lender a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from the Lender to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Lender, whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender.

6.4    <u>Indemnification</u>. The Borrower shall indemnify, defend and hold the Lender and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless of and from any claim brought or threatened against any Indemnitee by the Borrower, any guarantor or endorser of the Obligations, or any other person (as well as from reasonable attorneys' fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower, or any guarantor or endorser of the Obligations (each of which may be defended, compromised, settled or pursued by the Lender with counsel of the Lender's election, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of the Lender. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Borrower.

6.5    <u>Costs and Expenses</u>. The Borrower shall pay to the Lender on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by the Lender in establishing, maintaining, protecting or enforcing any of the Lender's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by the Lender in defending the Lender's security interest in, title or right to any collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of any Obligation.

6.6    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

7

6.7    Severability. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

6.8    Complete Agreement. This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

6.9    Binding Effect of Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until released in writing by the Lender. The Lender may transfer and assign this Agreement and deliver it to the assignee, who shall thereupon have all of the rights of the Lender, and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Agreement. The Borrower may not assign or transfer any of its rights or obligations under this Agreement. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

6.10    Further Assurances. Borrower will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Agreement and the other Loan Documents (including, without limitation, to correct clerical errors) or to comply with applicable statute or law.

6.11    Amendments and Waivers. This Agreement may be amended and Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if Borrower shall obtain the Lender's prior written consent to each such amendment, action or omission to act. No course of dealing and no delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Lender on any future occasion.

6.12    Terms of Agreement. This Agreement shall continue in full force and effect so long as any Obligations or obligation of Borrower to Lender shall be outstanding, or the Lender shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Borrower and Lender and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between Borrower and the Lender be construed to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

6.13    Notices. Any notices under or pursuant to this Agreement shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Lender at the address set forth in this Agreement or as any party may from time to time designate by written notice to the other party.

6.14    Governing Law. This Agreement shall be governed by the laws of the State of Indiana.

6.15    Reproductions. This Agreement and all documents which have been or may be hereinafter furnished by Borrower to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as

8

the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

6.16    **Jurisdiction and Venue.**  Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Indiana, over any suit, action or proceeding arising out of or relating to this Agreement. Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's address shown in this Agreement or as notified to the Lender and (ii) by serving the same upon the Borrower in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Borrower.

6.17    **JURY WAIVER.**  THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.  THE BORROWER CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as an instrument under seal as of March 25, 2015.

Borrower:
Lottaville Storage Inc.

By: _____
Beverly Janine Dobbs, President

Accepted: Velocity Commercial Capital, LLC

By: _____
Name: Jeff Taylor    Patrick Driscoll
Title: Executive Vice President    Assistant Vice President

9

© 2015 Medici, a division of Wolters Kluwer Financial Services

# EXHIBIT B



**velocity**
commercial capital

Loan No. ▮▮▮▮▮▮▮

## SEMI-ANNUAL ADJUSTABLE TERM NOTE

March 25, 2015

$144,000.00

For value received, the undersigned **Lottaville Storage Inc.**, an Indiana corporation (the "Borrower"), promises to pay to the order of Velocity Commercial Capital, LLC (together with its successors and assigns, the "Lender"), the principal amount of **One Hundred Forty-Four Thousand Dollars and Zero Cents ($144,000.00)** on or before **April 1, 2045** (the "Maturity Date"), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows. **$1,106.22** commencing on **May 1, 2015**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall initially bear interest thereon at a fixed rate equal to **Eight and Forty-Nine Hundredths Percent (8.490%)** per annum. The interest rate on the aggregate principal balance shall change on **April 1, 2018** (the "Special Change Date") to a fixed rate equal to **Four Percent (4.000%)** above the Wall Street Journal Prime Rate (as hereinafter defined) as of 30 days prior to such Special Change Date, except that in no case shall the interest rate on the Special Change Date be greater than Two Percent (2%) above the initial rate. The interest rate on the aggregate principal balance shall change again on **October 1, 2018** and on the 1st day of each month every sixth month thereafter (each a "Change Date") to a fixed rate equal to **Four Percent (4.000%)** above the Wall Street Journal Prime Rate as of 30 days prior to such Change Date, On the Special Change Date and each Change Date each monthly installment due and payable until the next Change Date shall be recalculated (increased or reduced) to reflect the adjusted interest rate, the outstanding principal balance at such time and the remaining term of the 360 month amortization period commencing on the date of this Note in accordance with the Lender's calculation in the Lender's sole discretion.

The calculation of the payment amount is based on a 360 month amortization period.

Notwithstanding anything to the contrary in this Note, the interest rate on this Note is limited by a floor and a ceiling as follows: (i) the maximum interest rate (i.e. ceiling) is **14.490%** per annum and (ii) the minimum interest rate (i.e. floor) is 8.490% per annum. In addition, on each Change Date the interest rate on this Note shall be changed (increased or reduced) by no more than 1% per annum.

Wall Street Journal Prime Rate means the rate published from time to time by the Wall Street Journal as the Prime Rate on corporate loans posted by at least 70% of the 10 largest U.S. banks, or, in the event the Wall Street Journal ceases publication of the Prime Rate, the base, reference or other rate then designated by the Lender, in its sole discretion, for general commercial loan reference purposes, it being understood that such rate is a reference rate, not necessarily the lowest, established from time to time, which serves as the basis upon which effective interest rates are calculated for loans making reference thereto.

The effective interest rate applicable to the Borrower's loans evidenced hereby shall be rounded to the nearest One-Eighth Percent (.125%).

Principal and interest shall be payable at the Lender's main office or at such other place as the Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to the Lender. In the event of any prepayment of this Note at any time through April 1, 2018 (the "Prepayment Charge Expiration Date") whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of the Lender, pay a "Prepayment Premium" equal to 5% of the principal amount so prepaid. No Prepayment Premium will be due Lender if (a) prior to the Prepayment Charge Expiration Date, a prepayment amount received plus all other prepayment amounts received in the most recent 12 months is not greater than 20% of the Principal Amount of the Note or (b) a prepayment is made in whole or in part after the Prepayment Charge Expiration Date. For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of the month.

At the option of the Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an "Event of Default"): (1) default of any liability, obligation, covenant or undertaking of the Borrower, any endorser or any guarantor hereof to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower, any endorser or any guarantor hereof under any other loan document delivered by the Borrower, any endorser or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower, any endorser or any guarantor with the Lender; (2) failure of the Borrower, any endorser or any guarantor hereof to maintain aggregate collateral security value satisfactory to the Lender; (3) default of any material liability, obligation or undertaking of the Borrower, any endorser or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower, any endorser or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower, any endorser or any guarantor hereof shall be determined by the Lender to have been false or misleading in any material respect when made; (5) if the Borrower, any endorser or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower, any endorser or any guarantor hereof and, if the Borrower, any endorser or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower, any endorser or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 et seq, or any other law in which the Borrower, any endorser or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower, any endorser or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower, any endorser or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon the Lender of a writ in which the Lender is named as trustee of the Borrower, any endorser or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower, any endorser or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between the Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower, any endorser or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; or (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower, any endorser or any guarantor hereof, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower, any endorser or any guarantor hereof to the Lender has been or may be impaired.

Any payments received by the Lender on account of this Note shall, at the Lender's option, be applied first, to any costs, expenses or charges then owed to the Lender by the Borrower; second, to accrued and unpaid interest, third, to the unpaid principal balance hereof; and the balance to escrows, if any. Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Lender may determine. The Borrower hereby authorizes the Lender to charge any deposit account which the Borrower may maintain with the Lender for any payment required hereunder without prior notice to the Borrower.

2

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

The Borrower represents to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

The Borrower and each endorser and guarantor hereof grant to the Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from the Lender to the Borrower and/or each endorser or guarantor hereof and any cash, securities, instruments or other property of the Borrower and each endorser and guarantor hereof in the possession of the Lender, whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower and/or any endorser or guarantor hereof to the Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower or any endorser or guarantor hereof to the Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender.

No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and every endorser or guarantor of this Note, regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waives all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower and each endorser and guarantor of this Note waive and terminate any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation, IC 34-55-10-2.

The Borrower and each endorser and guarantor of this Note shall indemnify, defend and hold the Lender and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower, by any endorser or guarantor, or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower or any endorser or guarantor hereof (each of which may be defended, compromised, settled or pursued by the Lender with counsel of the Lender's selection, but at the expense of the Borrower and any endorser and/or guarantor), except for any claim arising out of the gross negligence or willful misconduct of the Lender.

The Borrower and each endorser and guarantor of this Note agree to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4.0% plus the rate provided for herein. If any payment due under this Note, or under any other agreement executed and delivered in connection with this Note, including, without limitation, any amounts required to be paid into escrow accounts in connection with any mortgage securing this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums

3

due under this Note (and without limiting the Lender's other remedies on account thereof), a late charge equal to 5.0% of such unpaid amount, including, without limitation, any amounts required to be paid into escrow accounts in connection with any mortgage securing this Note.

This Note shall be binding upon the Borrower and each endorser and guarantor hereof and upon their respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any endorser or guarantor of this Note are joint and several; provided, however, the release by the Lender of the Borrower or any one or more endorsers or guarantors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any endorser or guarantor of this Note are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to the Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and endorser or guarantor of this Note, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to the Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by the Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower and each endorser and guarantor hereof each authorizes the Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by the Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

The Borrower will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to the Lender the security interest in any collateral securing this Note or to comply with applicable statute or law.

This Note shall be governed by the laws of the State of Indiana.

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Lender at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

The Borrower and each endorser and guarantor of this Note each irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Indiana, over any suit, action or proceeding arising out of or relating to this Note. Each of the Borrower and each endorser and guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Each of the Borrower and each endorser and guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, endorser's or guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Borrower(s), endorser(s) or guarantor(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower or such endorser or guarantor.

THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN

4

ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER, EACH ENDORSER AND GUARANTOR TO THE LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as an instrument under seal as of **March 25, 2015**.

Borrower:

Lottaville Storage Inc.

By: _Beverly Janine Dobbs_
Beverly Janine Dobbs, President

6149 Cleveland Street
Merrillville, Indiana
46410

5

© 2015 Medici, a division of Wolters Kluwer Financial Services

## ALLONGE TO PROMISSORY NOTE

This instrument is an Allonge that shall be attached to and made a part of a certain Promissory Note, dated March 25, 2015, executed by Lottaville Storage Inc. in favor of Velocity Commercial Capital, LLC (the "Lender").

Pay to the order of _____ without recourse.

Velocity Commercial Capital, LLC

By: _____

Name:    Patrick Driscoll

Title:    Assistant Vice President

# EXHIBIT C



## UNLIMITED GUARANTY

TO: Velocity Commercial Capital, LLC, a California limited liability company (the "Lender")

RE: Lottaville Storage Inc. , an Indiana corporation (the "Borrower")

  To induce the Lender to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Lender to or for the account of the Borrower, the undersigned Beverly Janine Dobbs (the "Guarantor") absolutely, unconditionally and irrevocably guarantees the full and punctual payment to the Lender of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Lender from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by the Lender in connection with such obligations, this Unlimited Guaranty (this "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Lender.  This is a guaranty of payment and not collection.

Guarantor also agrees:

(1) to indemnify and hold the Lender and its directors, officers, employees, agents and attorneys harmless from and against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender;

(2) that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to or consent by the Guarantor;

(3) that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Lender first to resort to any other right, remedy or security;

(4) that Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever until the Lender is indefeasibly paid in full, nor any right of recourse to security for the debts and obligations of the Borrower to the Lender;

(5) that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6) that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

(7)    that the Lender's books and records showing the account between the Lender and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)    that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until the obligations guaranteed hereby are irrevocably paid in full;

(9)    that the death of Guarantor shall not effect the termination of this Guaranty as to Guarantor providing, that in any event within Sixty (60) days after the death of the Guarantor, Borrower or any surviving guarantor shall provide to the Lender evidence that the estate of the Guarantor confirms its obligations to the Lender under this Guaranty;

(10)   that termination, release or limitation of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(11)   that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Lender with interest and costs of collection;

(12)   that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Lender consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(13)   that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Lender;

(14)   that the Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender to the Guarantor and any property of the Guarantor at any time in the possession of the Lender whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender;

(15)   that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Lender to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer or conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(16) that any rights and remedies available to the Lender under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Lender at law or in equity;

(17) that the Lender's delay or omission in exercising any of the Lender's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Lender's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Lender. The Lender's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(18) that this Guaranty incorporates all discussions and negotiations between the Lender and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Lender's duly authorized officer; and

(19) that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business)

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; any right to exoneration or marshaling. To the maximum extent permitted by law, Guarantor waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead law, including without limitation, IC 34-55-10-2. To the extent that it lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty (including, without limitation, to correct clerical errors) or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty shall be governed by the laws of the State of Indiana, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Lender's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Indiana, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby

consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as an instrument under seal and dated March 25, 2015.

Guarantor:

Beverly Janine Dobbs, individually

Address:     1715 Bethel Street
             Leeds, Alabama
             35094

4

© 2015 Medici, a division of Wolters Kluwer Financial Services

**EXHIBIT D**

17

STATE OF INDIANA
LAKE COUNTY
FILED FOR RECORD

**2015 019533**

2015 APR -2 AM 9: 46

MICHAEL B. BROWN
RECORDER

UPON RECORDATION RETURN TO:

Velocity Commercial Capital, LLC

Attention: Velocity Commercial Capital, LLC

PO BOX 7089

Attention: Servicing Department

Westlake Village, CA 91359-7089

### COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Mortgage") is entered into as of **March 25, 2015**, between **Lottaville Storage Inc.** , an Indiana corporation, with an address of **6149 Cleveland Street, Merrillville, Indiana 46410** (the "Mortgagor") and Velocity Commercial Capital, LLC, a California limited liability company, with an address of PO BOX 7089, Westlake Village, CA 91359-7089 (the "Lender").

The real property which is the subject matter of this Mortgage has the following address(es): **6149 Cleveland Street, Merrillville, Indiana 46410-2302** (the "Address(es)").

### 1.   MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES

1.1   Mortgage.   For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Lender and all obligations respecting  that certain **Semi-Annual Adjustable Term Note**, dated **March 25, 2015**, by **Lottaville Storage Inc.**  in favor of the Lender in the original principal amount of **$144,000.00** (the "Note"; and collectively, along with all other agreements, documents, certificates and instruments delivered in

COMMUNITY TITLE COMPANY
FILE NO  157287  LARECO,
refi

connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Mortgage total **$144,000.00** as of the date of this Mortgage, but this Mortgage shall nevertheless secure payment and performance of all Obligations, including, without limitation, any other liabilities and future advances, direct or indirect, absolute or contingent, now existing or hereafter arising from Mortgagor to Lender up to an amount of **$432,000.00**; which amount shall not be greater than Three Hundred Percent (300%) of the original principal amount, all without relief from valuation and appraisement laws. Pursuant to I.C. § 32-8-11-9, the lien of this Mortgage with respect to any future advances, modifications, extensions, and renewals referred to herein and made from time to time shall have the same priority to which this Mortgage otherwise would be entitled as of the date this Mortgage is executed and recorded without regard to the fact that any such future advance, modification, extension, or renewal may occur after this Mortgage is executed.

The latest Obligation secured by this Mortgage matures on April 1, 2045.

1.2    <u>Security Interest in Property</u>.  As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of Indiana (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. In addition, part of the Property is or may become fixtures. It is intended that, as to such fixtures, this Mortgage shall be effective as a financing statement filed as a fixture filing from the date of the filing of the Mortgage for record with the recorder of each county in Indiana where the Property is located. The information in this paragraph is provided in order that this Mortgage shall comply with the requirements of the Uniform Commercial Code for a mortgage instrument to be filed as a financing statement. Mortgagor is the "Debtor" and its name and mailing address are set forth in the preamble of this Mortgage. The "Secured Party" is the Lender and its name and mailing address from which information concerning the security interest granted herein may be obtained are as set forth in the preamble of this Mortgage. The record owner of the Property is Mortgagor.

1.3    <u>Collateral Assignment of Leases and Rents</u>.  The Mortgagor hereby irrevocably and unconditionally assigns to the Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by the Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Lender exercises its rights and remedies to collect such rents as set forth herein.

1.4    <u>Conditions to Grant</u>.  The Lender shall have and hold the above granted Property unto and to the use and benefit of the Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

2



1.5    <u>Property</u>.  The term "Property," as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the Uniform Commercial Code, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

1.6    <u>Obligations</u>.  The term "Obligation(s)," as used in this Mortgage, shall mean without limitation all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to the Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Lender; or are due indirectly by the Mortgagor to the Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

1.7    <u>Cross-Collateral and Future Advances</u>.  It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

2.    REPRESENTATIONS, WARRANTIES, COVENANTS

2.1    <u>Representations and Warranties</u>.  The Mortgagor represents and warrants that:

(a)    This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

3



(b)     The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances");

(c)     The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d)     As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Lender, and the Mortgagor certifies and warrants to the Lender, based on Mortgagor's knowledge, that none of the Property is within the definition of the term "property" as defined in I.C. § 13-11-2-174 and used in the Indiana Responsible Property Transfer Law ("IRPTL") (I.C. § 13-25-3-1), including, without limitation, I.C. § 13-25-3-6, except as disclosed in environmental reports/Phase I or II reports; and

(e)     Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

2.2     <u>Recording; Further Assurances</u>. The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of the Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Lender in the Property and the rights of the Lender under this Mortgage. Mortgagor will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other or further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Lender the security interest in, the Property or to comply with applicable statute or law.  To the extent permitted by applicable law, Mortgagor authorizes the Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes the Lender to file financing statements describing any agricultural liens or other statutory liens held by the Lender.  Mortgagor agrees to furnish any such information to the Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as the Lender may reasonably request for the Lender (i) to obtain an acknowledgment, in form and substance satisfactory to the Lender, of any bailee having possession of any of the Property that the bailee holds such Property for the Lender, and (ii) otherwise to insure the continued perfection and priority of the Lender's security interest in any of the Property and the preservation of its rights therein.  Mortgagor hereby constitutes the Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

4



2.3    Restrictions on the Mortgagor.  The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Lender in each instance:

(a)    Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(b)    Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

(c)    Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien.  The Mortgagor further agrees to give the Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same.  The Mortgagor agrees to defend its title to the Property and the Lender's interest therein against the claims of all persons and, unless the Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or the Lender's interest hereunder.

2.4    Operation of Property.  The Mortgagor covenants and agrees as follows:

(a)    The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances, and the Mortgagor covenants that it shall observe, perform and comply with the requirements of IRPTL in connection with this Mortgage and the other Loan Documents;

(b)    The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Lender, provide deductible amounts acceptable to the Lender, name the Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Thirty (30)

5



days prior written notice to the Lender.    Such policies shall include (i) a mortgage endorsement determined by the Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Lender may request. The Mortgagor will furnish to the Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Lender.  The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(c)     Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of the Lender, execute any assignment of the Leases except in favor of the Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(d)     Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Lender and the Lender's agents, employees and representatives, at such reasonable times as the Lender may request, to enter and inspect the Property and such books and records; and

(e)     Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

2.5     Payments.  The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein.  If and when requested by the Lender, the Mortgagor shall deposit from time to time with the Lender sums determined by the Lender to be sufficient to pay when due the amounts referred to in this Section.  The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Lender's request, provides the Lender with adequate cash security, in the Lender's reasonable judgment, against the enforcement thereof.  The Mortgagor shall furnish to the Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof.  The Mortgagor shall also furnish to the Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Lender. If Mortgagor shall fail to pay such sums, the Lender may, but shall not be obligated to, advance such sums.  Any sums so advanced by the Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.6     Notices; Notice of Default.  The Mortgagor will deliver to the Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases.  The Mortgagor further agrees to deliver

6



to the Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7    Takings.  In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Lender, describing the nature and extent thereof. The Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Lender copies of all notices, pleadings, determinations and other papers relating thereto.  The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking.  The Mortgagor shall not settle any such claim without the Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Lender and immediately pay the same to the Lender.  The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Lender in amounts not exceeding the Obligations.  The Lender may apply such amounts to the Obligations in such order as the Lender may determine.

2.8    Insurance Proceeds.  The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Lender and, at the option of the Lender, be applied to the Obligations in such order as the Lender may determine; provided, however, that if the Lender shall require repair of the Property, the Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Lender and promptly paid to it.

### 3.    CERTAIN RIGHTS OF THE LENDER

3.1    Legal Proceedings.  The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage.  The Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

3.2    Appraisals/Assessments.  The Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as the Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

3.3    Financial Statements.  The Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Lender.

3.4    Leases and Rent Roll.  The Mortgagor shall deliver to the Lender (i) during each calendar year and at such other times as the Lender shall request a rent roll for the Property, in form acceptable to the Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Lender shall request executed copies of all the Leases.

### 4.    DEFAULTS AND REMEDIES

4.1    Events of Default.  "Event of Default" shall mean the occurrence of any one or more of the following events:

7



(a)    default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

(b)    failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(c)    the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d)    failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(e)    default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(f)    if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(g)    if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(h)    the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(i)    the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(j)    the service upon the Lender of a writ in which the Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(k)    a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

8



(l)     any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(m)     the termination or revocation of any guaranty of the Obligations; or

(n)     the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Lender has been or may be impaired.

4.2     Remedies. On the occurrence of any Event of Default the Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a)     Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b)     Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Lender upon the Property for any reason shall not cause the Lender to be a mortgagee in possession, except upon the express written declaration of the Lender;

(c)     With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints the Lender as its true and lawful attorney with the power for the Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases.  The Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof.  The Lender shall be liable to account only for such Rents actually received by the Lender.  Lessees under the Leases are hereby authorized and directed, following notice from the Lender, to pay all amounts due the Mortgagor under the Leases to the Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d)     In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Lender shall, in its sole and exclusive discretion, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time

9



thereafter. In addition, the Lender may in its discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e) If the Property shall consist of one or more parcels, whether or not contiguous and whether or not located in the same county, or if in addition to this Mortgage, the Lender shall now or hereafter hold one or more mortgages for the Obligations upon the Property or any additional property, then to the fullest extent permitted by law, the Lender may, at its election, commence or consolidate in a single foreclosure action all foreclosure proceedings against all such properties securing the Obligations (including the Property), which action may be brought or consolidated in the courts of any county in Indiana where the Property is located. The Mortgagor acknowledges that the right to maintain a consolidated foreclosure action is a specific inducement to the Lender to extend the Obligations secured by this Mortgage, and the Mortgagor expressly and irrevocably waives any objections to the commencement or consolidation of the foreclosure proceedings in a single action and any objections to the laying of venue or based on the grounds of forum non conveniens that it may now or hereafter have. The Mortgagor further agrees that if the Lender shall be prosecuting one or more foreclosure or other proceedings against a portion of the Property or any additional properties, or if the Lender shall have obtained a judgment of foreclosure and sale or similar judgment against such collateral, then, whether or not such proceedings are being maintained or judgments were obtained inside or outside the State of Indiana, the Lender may commence or continue foreclosure proceedings and exercise its other remedies granted in this Mortgage against all or any part of the Property and/or additional properties, and the Mortgagor waives any objections to the commencement or continuation of a foreclosure of this Mortgage or exercise of any other remedies hereunder based on such other proceedings or judgments, and waives any right to seek to dismiss, stay, remove, transfer or consolidate either any action under this Mortgage or such other proceedings on such basis. Neither the commencement nor continuation of proceedings to foreclose this Mortgage nor the exercise of any other rights hereunder nor the recovery of any judgment by the Lender in any such proceedings shall prejudice, limit or preclude the Lender's right to commence or continue one or more foreclosure or other proceedings or obtain a judgment against any additional properties or other collateral (either inside or outside the State of Indiana) that directly or indirectly secures the Obligations, and the Mortgagor expressly waives any objections to the commencement of, continuation of, or entry of a judgment in such other proceedings or exercise of any remedies in such proceedings based upon any action or judgment connected to this Mortgage, and the Mortgagor also waives any right to seek to dismiss, stay, remove, transfer or consolidate either such other proceedings or any action under this Mortgage on such basis. It is expressly understood and agreed that, to the fullest extent permitted by law, the Lender may, at its election, cause the sale of all Property and/or additional properties that are the subject of a single foreclosure action at either a single sale or at multiple sales conducted simultaneously and take such other measures as are appropriate in order to effect the agreement of the parties to dispose of and administer all collateral securing the Obligations (directly or indirectly) in the most economical and least time-consuming manner;

(f) Upon, or at any time after, instituting any judicial foreclosure of the liens and security interests provided for herein or any other legal proceedings hereunder, the Lender may make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Mortgagor and without regard to the adequacy of the Property for the repayment of the Obligations or the solvency of Mortgagor or any person or persons liable for the payment of the Obligations secured hereby, and Mortgagor does hereby irrevocably consent to such appointment. Such receiver shall have all of the powers and duties of receivers pursuant to I.C. § 34-48-1-7;

10



(g)     Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide the Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Lender "control" over the Property or cause the Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(h)     Take such other actions or proceedings as the Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.  Where any provision of this Mortgage is inconsistent with any provision of Indiana law regulating the creation or enforcement of a lien or security interest in real or personal property including, without limitation, I.C. § 32-15-6-1 et. seq. ("Foreclosure of Mortgages"), the provisions of Indiana law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provisions of this Mortgage that can be construed in a manner consistent with Indiana law.  To the extent the laws of Indiana limit (i) the availability of the exercise of any of the remedies set forth herein, including without limitation the remedies involving a power of sale on the part of the Lender and the right of the Lender to exercise self-help in connection with the enforcement of the terms of this Mortgage, or (ii) the enforcement of waivers and indemnities made by the Mortgagor, such remedies, waivers, or indemnities shall be exercisable or enforceable, any provisions in this Mortgage to the contrary notwithstanding, if, and to the extent, permitted by the laws in force at the time of the exercise of such remedies or the enforcement of such waivers or indemnities without regard to the enforceability of such remedies, waivers or indemnities at the time of the execution and delivery of this Mortgage.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

11

4.3    <u>Advances</u>.  If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation.  Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property.  Any amounts paid by the Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.4    <u>Cumulative Rights and Remedies</u>.  All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other.  The Mortgagor further agrees that the Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

4.5    <u>Mortgagor's Waiver of Certain Rights</u>.  To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5.    MISCELLANEOUS

5.1    <u>Costs and Expenses</u>.  To the extent permitted by applicable law, the Mortgagor shall pay to the Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with the Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations.  Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

5.2    <u>Indemnification Regarding Leases</u>.  The Mortgagor hereby agrees to defend, and does hereby indemnify and hold the Lender and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Lender to perform any obligations under the Leases.  It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

5.3    <u>Indemnification Regarding Hazardous Substances</u>.  The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any

12



current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to the Lender including repayment of all Obligations.

5.4     Indemnitee's Expenses. If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

5.5     Waivers. The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of the Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Lender's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under any such other agreement or transaction) but all the Lender's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine. Anything contained herein or in I.C. § 32-8-16-1.5 to the contrary notwithstanding, no waiver made by Mortgagor under this Mortgage or any or all of the other Loan Documents shall constitute the consideration for or be deemed to be a waiver or release by the Lender or any judgment holder of the Obligations or the right to seek a deficiency judgment against Mortgagor or any other person or entity who may be personally liable for the Obligations, which right to seek a deficiency judgment is hereby reserved, preserved and retained by the Lender for its own behalf and its successors and assigns.

5.6     Waiver of Homestead. To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, IC 34-55-10-2.

5.7     Joint and Several. If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

5.8     Severability. If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

13



5.9    Complete Agreement.   This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

5.10    Binding Effect of Agreement.   This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid.   The Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Lender; and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral.    Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

5.11    Notices.   Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

5.12    Governing Law.   This Mortgage shall be governed by the laws of the State of Indiana.

5.13    Reproductions.   This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.14    Jurisdiction and Venue.   The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Indiana, over any suit, action or proceeding arising out of or relating to this Mortgage.    The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.   The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to the Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

5.15    JURY WAIVER.   THE MORTGAGOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE MORTGAGOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.



EXECUTED under seal as of the date first above written.

Witness:                                    Mortgagor:
                                            Lottaville Storage Inc.

_____            By: _____
                                            Beverly Janine Dobbs, President


STATE OF ~~INDIANA~~ Alabama            :
                                                  : SS.
COUNTY OF Jefferson                     :


Before me, the undersigned, a Notary Public in and for said County and State, personally appeared Beverly Janine Dobbs, known to me to be the President of Lottaville Storage Inc., an Indiana Corporation, who, having been duly sworn under oath, certifies that he/she is fully authorized to execute and deliver this instrument on behalf of Lottaville Storage Inc., and acknowledged the execution of the foregoing instrument for and on behalf of Lottaville Storage Inc..


Witness my hand and Notarial Seal the 25th day of March , 2015


_____, NOTARY PUBLIC

RESIDING IN Jefferson COUNTY, ~~INDIANA~~ Alabama

INSTRUMENT PREPARED BY: MONICA GUZMAN
                                   VELOCITYCOMMERCIAL CAPITALLLC


15


Commercial Mortgage 1                        © 2015 Medici, a division of Wolters Kluwer Financial Services

# EXHIBIT "A"
# LEGAL DESCRIPTION

File No.: 157287

PARCEL 1:

PART OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 8 WEST OF THE SECOND PRINCIPAL MERIDIAN, DESCRIBED AS: COMMENCING AT THE NORTHWEST CORNER OF THE NORTHEAST 1/4 OF SAID SECTION 8; THENCE SOUTH ALONG THE WEST LINE OF THE NORTHEAST 1/4 OF SAID SECTION 8, A DISTANCE OF 667.7 FEET; THENCE EASTERLY ALONG THE NORTH LINE OF THE SOUTHWEST 1/4, NORTHWEST 1/4,. NORTHEAST 1/4 OF SAID SECTION 8, A DISTANCE OF 241.8 FEET, MORE OR LESS, TO THE EASTERLY LINE OF STATE ROAD #55 AND THE POINT OF BEGINNING OF THIS DESCRIBED PARCEL; THENCE EAST ALONG THE LAST DESCRIBED LINE 312.45 FEET; THENCE DEFLECTING TO THE RIGHT AND SOUTHEASTERLY WITH AN INTERIOR ANGLE OF 127 DEGREES 40 MINUTES A DISTANCE OF 50 FEET TO A POINT ON THE WEST LINE OF A 40 FOOT COUNTY ROAD; THENCE DEFLECTING TO THE RIGHT SOUTHWESTERLY ALONG THE LINE OF SAID COUNTY ROAD WITH AN INTERIOR ANGLE OF 90 DEGREES A DISTANCE OF 220.1 FEET; THENCE DEFLECTING TO THE RIGHT AND NORTHWESTERLY WITH AN INTERIOR ANGLE OF 130 DEGREES 09 MINUTES A DISTANCE OF 200.05 FEET, MORE OR LESS, TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF STATE ROAD # 55; THENCE DEFLECTING TO THE RIGHT AND NORTHEASTERLY AND ALONG THE EAST RIGHT-OF-WAY LINE OF STATE HIGHWAY # 55 WITH AN INTERIOR ANGLE OF 90 DEGREES 37 MINUTES FOR A DISTANCE OF 134.58 FEET, MORE OR LESS TO THE POINT OF BEGINNING.

PARCEL 2:

PART OF THE NORTHWEST QUARTER (NW 1/4) OF THE NORTHEAST QUARTER (NE 1/4) OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 8 WEST OF THE 2nd P.M., IN THE TOWN OF MERRILLVILLE, LAKE COUNTY, INDIANA, DESCRIBED AS: COMMENCING AT THE NORTHWEST CORNER OF THE NE 1/4 OF SAID SECTION 8; THENCE SOUTH, ALONG THE WEST LINE OF THE NE 1/4 OF SAID SECTION 8, A DISTANCE OF 667.7 FEET; THENCE EASTERLY, ALONG THE NORTH LINE OF THE SOUTHWEST QUARTER (SW 1/4) OF THE NORTHWEST QUARTER (NW 1/4) OF THE NORTHEAST QUARTER (NE 1/4) OF SAID SECTION 8, A DISTANCE OF 241.8 FEET, MORE OR LESS, TO THE EASTERLY LINE OF STATE ROAD #55 AND THE POINT OF BEGINNING OF THIS DESCRIBED PARCEL; THENCE NORTH 89 DEGREES 40' 00" EAST, ALONG THE NORTH LINE OF SAID SW 1/4, NW 1/4, NE 1/4 OF SAID SECTION 8, A DISTANCE OF 312.45 FEET; THENCE SOUTH 38 DEGREES 00' 00" EAST, DISTANCE OF 50.00' TO A POINT ON THE NORTHERLY LINE OF LOTTAVILLE ROAD; THENCE NORTH 52 DEGREES 06' 00" EAST, ALONG SAID NORTHERLY LINE OF LOTTAVILLE ROAD, A DISTANCE OF 73.80 FEET; THENCE NORTH 63 DEGREES WEST, A DISTANCE OF 172.88 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF LOT 1 IN INDIANA-AMERICAN CLEVELAND STREET PUMP STATION SUBDIVISION IN THE TOWN OF MERRILLVILLE, INDIANA, AS SHOWN IN PLAT BOOK 90, PAGE 88, IN THE LAKE COUNTY RECORDER'S OFFICE; THENCE SOUTH 26 DEGREES 45' 00" WEST, ALONG SAID SOUTHEASTERLY LINE OF LOT 1, A DISTANCE OF 50.00 FEET TO THE SOUTHERLYMOST CORNER OF SAID LOT 1; THENCE NORTH

File No.: 157287
Exhibit A Legal Description

Page 1 of 2

63 DEGREES 15' 00" WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 217.30 FEET TO THE WESTERLYMOST CORNER OF SAID LOT 1; THENCE SOUTHWESTERLY, ALONG THE EASTERLY LINE OF STATE ROAD # 55 TO THE POINT OF BEGINNING,

**EXHIBIT E**

2016 020699

2016 APR -5  AM 9: 11

LAKE COUNTY
FILED FOR RECORD

MICHAEL B. BROWN
RECORDER

**Record & Return To:**
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315
800-927-9801

**This instrument was prepared by:**
Corporation Service Company
801 Stevenson Drive
Springfield, IL 62703
800-858-5294

Loan #: ▉▉▉▉▉▉
Deal Name: VCC 2015-1 Securitization
**IN, Lake**

S35542SASG
REF112936336

### ASSIGNMENT OF COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **Velocity Commercial Capital, LLC, a California limited liability company**, 30699 Russell Ranch Road, Suite 295, Westlake Village, CA, 91362, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2015-1**, 190 South LaSalle Street, MK-IL-SL7R, Chicago, IL 60603 herein ("Assignee") that certain COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS recorded in Lake County, IN and referenced below:

**Borrower: Lottaville Storage Inc., an Indiana corporation**
**Instrument: 2015019533 Loan Amount: $144,000.00**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.
TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

**I affirm, under the penalties of perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. By: _____. Name: Jeff Taylor**

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 03/14/2016.

Velocity Commercial Capital, LLC, a California limited liability company

By: _____
Name:   Jeff Taylor
Title:    Executive Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On 03/14/2016 before me, Taylor Robinson, Notary Public, personally appeared Jeff Taylor, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public: Taylor Robinson
My Comm. Expires: 01/16/2019

TAYLOR ROBINSON
Commission # 2097333
Notary Public - California
Los Angeles County
My Comm. Expires Jan 16, 2019

Velocity Commercial Capital, LLC, A California
Limited Liability Company
Velocity Commercial Capital, LLC, A California
Limited Liability Company
30699 Russell Ranch Rd. Suite 295
Westlake Village CA 91362

**This instrument was Drafted By:**
Velocity Commercial Capital, LLC, A California
Limited Liability Company
**Travis Baum**
30699 Russell Ranch Rd. Suite 295
Westlake Village CA 91362
(818) 532-3700
jmills@velocitymortgage.com

Loan #: ████████ 2022-MC1_01

2022-532160
08/08/2022 09:47 AM
TOTAL FEES: 25.00
BY: JAS
PG #: 1

STATE OF INDIANA
LAKE COUNTY
FILED FOR RECORD
GINA PIMENTEL
RECORDER

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2015-1 , 191 South LaSalle Street, 7th Floor, Chicago, IL 60603,** by these presents does convey, assign, transfer and set over to:
**U.S. Bank National Association, as Indenture Trustee for VCC 2022MC-1 Trust, 191 South LaSalle Street, MK-IL-SL7R Chicago, IL 60603,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$144,000** is recorded in the State of **INDIANA,** County of **Lake** Official Records, dated **03/25/2015** and recorded on **04/02/2015** as Instrument No. **2015019533**
Original Mortgagor: **Lottaville Storage Inc. An Indiana Corporation**
Original Mortgagee: **Velocity Commercial Capital, LLC, a California Limited Liability Company**
Property Address: **6149 Cleveland Street Merrillville, IN 46410**

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document.
IN WITNESS WHEREOF, this instrument was executed, signed and delivered by the undersigned effective **08/04/2022.**

**Velocity Commercial Capital, LLC, A California Limited**
**Liability Company**

By: _~B.Am_
Name: **Travis Baum**
Title: **Manager, Post Closing**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF **California**
COUNTY OF **Los Angeles**  } s.s.

On **08/04/2022,** before me, **Jason Conchas Jara,** Notary Public, personally appeared **Travis Baum,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_Jann Jia_

Notary Public: **Jason Conchas Jara**
My Commission Expires: **04/25/2026**

Drafted By: **Travis Baum**

**EXHIBIT B**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR VCC 2022MC-1 TRUST, | : : : : : | Case No. 2:24-cv-00068-JTM-JEM |
| | : | (Judge Philip P. Simon) |
| Plaintiff, | : : | (Mag. John E. Martin) |
| vs. | : : | |
| LOTTAVILLE SORAGE, INC., *et al.*, | : : | |
| Defendants. | : | |

### AFFIDAVIT OF ZACHARY D. PRENDERGAST

STATE OF OHIO       )
                      ) SS
COUNTY OF HAMILTON  )

      Now comes the Affiant, Zachary D. Prendergast, being first duly sworn and cautioned, and hereby states as follows for his Affidavit:

1. My name is Zachary D. Prendergast. My business address is Robbins, Kelly, Patterson & Tucker, LPA, 312 Elm Street, Suite 2200, Cincinnati, Ohio 45202.

2. This Affidavit is based upon my personal knowledge.

3. I am trial attorney of record for Plaintiff in the above-captioned case.

4. Upon information and belief, Defendants Beverly Janine Dobbs and Mary Ramierez AKA Mary Ramirez are not now in the "Military Service" as that term is defined by the Servicemembers Civil Relief Act, 50 U.S.C. § 3901, *et seq.*

{05418001-1 }

5. Upon information and belief, no other Defendants in the above-captioned case are natural person parties who are in the "Military Service" as that term is defined by the Servicemembers Civil Relief Act.

FURTHER, AFFIANT SAYETH NAUGHT.

_____

Zachary D. Prendergast

Sworn to and subscribed to before me this 12th day of December, 2024 Zachary D. Prendergast



Ashley Ryan Clark
Notary Public, State of Ohio
My Commission Expires:
August 29, 2026

_____

Notary Public

My commission expires: 8/29/2026